Daniels, J.
The order for the bill of particulars was evidently made under the authority of the case of Miller v. Kent (59 How., 321), arising out of the same business which forms the subject of the plaintiff’s complaint. But since that case was decided the affidavits made on behalf of the defendants in this action proved the fact to be that the books of account of the persons concerned in the business have been scattered and lost or mislaid, rendering it impracticable for them to make and furnish the bill of particulars directed by the order, and the fact that six years had nearly expired between the completion of the business and the commencement of the suit, is corroborative of these statements.
But the affidavits read upon the hearing of the motion established the transaction, out of which the plaintiff’s claim has arisen, to have been an unlawful combination to ad *432 vanee and raise the price of lard. It is so shown by the agreement forming a part of defendants’ answer, as well as by the affidavits contained in the case, including that of the plaintiff himself, that the nature of their business was what is called a pool for the purchase and sale of lard. And to render it successful the parties to the agreement, including the plaintiff, were to withhold from market a large quantity of lard respectively owned by them for the' apparent object of advancing the price of the commodity in which they had ágreed to deal.
The agreement contains this language : “Now, for and in consideration of the sum of one dollar to each of the aforesaid parties paid by E. A. Kent & Co., and for other valuable considerations, receipt of which is hereby acknowledged, the aforesaid James R. Keene, W. Butcher Sons and D. & N. G-. Miller agree and bind themselves to hold, tie up and effectually withdraw from market, so that the same cannot be sold during the continuance of this agreement without the written consent of all the parties hereto, the aforementioned number of tierces of lard, to wit: James R. Keene, 50,000; W. Butcher Sons, 40,000; D. & N. G-. Miller, 16,000; and from time to time, when demanded by E. A. Kent & Co., to furnish the said E. A. Kent & Co. with evidence satisfactory to them that the said number of tierces of lard are withheld from market and in possession of the aforesaid parties respectively. And it shall be the duty of said E. A. Kent_& Co. to obtain such evidence of possession whenever required by either of the parties hereto.” The business of the combination is shown to have been carried on under this agreement, which, however, it is alleged was violated by the plaintiff himself. Its object was to control the product as far as that could be done in which these parties had agreed to deal and to withhold it from sale in the market, thereby enabling them to advance the price of the commodity to the public. This was an agreement and combination which the law will not sanction. It will not permit parties owning property, and contemplating the purchase and sale of more of it, to combine together to keep it off the market, and in that manner oblige the public to pay a larger price for the article than it would otherwise secure. Such a combination is an unlawful conspiracy punishable as a crime. When it may be successfully carried out its effect is to impose upon the public and to oblige individuals having occasion to purchase the article dealt in, to pay more for it than its market value. So far as such a combination or scheme may be rendered successful, it is little if anything less than respectable robbery, which the law will not permit or sustain.
*433 This principle was considered in Arnot v. Pittston, etc., Coal Company (68 N. Y., 558), where it was stated “that a combination to effect such a purpose is inimical to the interests of the public, and that all contracts designed to effect such an end are contrary to public policy and therefore illegal.” Id., 565. And to the same general effect is Bell v. Leggett, 3 Seld., 176. And it is further well settled where such a combination or conspiracy may have been carried into effect that the law will not aid either of the parties in any endeavor by means of legal proceedings to secure or obtain his share of the plunder. Knowlton v. Congress, etc., Company, 57 N. Y., 518.
On the contrary it will leave the parties precisely where they have placed themselves. It will not interpose to secure to either that advantage which, under the terms of the agreement entered into and executed, he had reason to expect would be conceded to Mm by the other parties to the unlawful transaction. If persons devise and enter into schemes or conspiracies of this character, they must depend for their remedy upon the application of the rule which may be observed by other confederates, requiring that there shall be honor among certain classes of persons who violate the laws of the state. They cannot appeal to the court for redress, or for any aid or assistance, in endeavoring to enforce the contract so far as it may be in favor of one of the parties against the others. This feature of the case-was not in that of Miller v. Kent, and, therefore, not considered by the court. But as it is in the present suit, and not only not denied, but substantially conceded by the plaintiff himself in his own affidavit, he has no right to expect that the court will interpose its authority in his behalf to enforce that forlorn principle of honor upon which his alleged rights must be successfully dependent.
The order should be reversed and the motion denied, with the usual costs and disbursements.
Brady, J., concurs in the result that the order appealed from should be reversed.